S97G0929. McDANIEL v. ELLIOTT et al.

(497 SE2d 786)

HUNSTEIN, Justice.

Appellant Jerry McDaniel, individually and as a shareholder in

J & J Landfill, Inc., brought suit against appellees James Elliott, Jerry Ann Elliott and J & J Landfill alleging, inter alia, fraud and misrepresentation. There was evidence adduced at trial from which the jury could have found that James Elliott and McDaniel formed J & J Landfill, a landfill business which was to be operated on property leased from Elliott's wife, Jerry Ann Elliott. Jerry Ann became vice-president of J & J, and the parties agreed that J & J would lease the land for $1 per year. McDaniel moved his heavy equipment onto the site, performed all the necessary site-preparation work, advanced money to have the property surveyed and designed by an engineer, lent his credit to the venture, and provided technical expertise to build the landfill. James Elliott then told McDaniel that Jerry Ann was issuing no more leases, the corporation would be shut down to get McDaniel out of it, and the Elliotts planned to reopen the landfill without McDaniel. McDaniel brought suit against J & J and the Elliotts following Jerry Ann's refusal to renew the lease on the agreed terms and notice to J & J to vacate the premises. The jury awarded damages to McDaniel on all counts, including punitive damages in the amount of $650,000 on his claim of intentional fraud and misrepresentation. Although no objection was raised below or enumerated as error on appeal, the Court of Appeals nevertheless sua sponte limited punitive damages to $250,000 by imposing the punitive damage cap found in subsection (g) of OCGA § 51-12-5.1 on the basis that the jury did not make a separate finding that the Elliotts acted with specific intent to cause McDaniel harm. *Elliott v. McDaniel*, 224 Ga. App. 848 (5) (483 SE2d 104) (1996).

We granted McDaniel's petition for writ of certiorari to determine whether OCGA § 51-12-5.1 (f) requires a jury on a claim for fraud to make a separate finding that the defendant acted with specific intent to injure in order to authorize an award above $250,000. We answer that question in the negative and find that the jury in this case necessarily found specific intent to harm as an essential element of McDaniel's intentional fraud claim. As for all future cases, however, we adopt a bright line rule requiring both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the $250,000 cap on punitive damages.

1. Under OCGA § 51-12-5.1 (b), punitive damages may be awarded only where it is established by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Pursuant to OCGA § 51-12-5.1 (g), punitive damages are

limited to a maximum of $250,000 for any tort action,[1] unless the trier of fact finds that "the defendant acted, or failed to act, with the specific intent to cause harm." Id. at (f). The Elliotts argue that § 51-12-5.1 (f) requires a separate finding of specific intent to cause harm. We disagree.

In construing an act of the General Assembly, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms. *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Applying these well-recognized rules of statutory construction, we find nothing in subsection (f) or the remainder of OCGA § 51-12-5.1 which would require a separate finding of specific intent to cause harm or use of a special verdict form as a prerequisite to avoiding the $250,000 cap. The General Assembly did impose in subsection (d) specific requirements as to the manner in which an award of punitive damages shall be made, including the requirement of a special finding by the trier of fact and the use of an appropriate verdict form.[2] See OCGA § 51-12-5.1 (d) (1). In the absence of a similar express requirement in subsection (f), we conclude that the General Assembly did not intend to require the trier of fact to make a separate finding of specific intent to cause harm in order to lift the $250,000 cap on punitive damages. See *Hinton v. State of Ga.*, 224 Ga. App. 49 (2) (479 SE2d 424) (1996).

2. Nor do we find that a separate finding of specific intent was required by the allegations raised or the evidence presented. Under the facts of this case, a separate finding of specific intent to cause harm was not required because the jury necessarily found such intent when it found the Elliotts committed fraud with the intention and purpose of deceiving and injuring McDaniel. In count one of his complaint, McDaniel alleged that the Elliotts committed fraud by knowingly and intentionally misleading him into investing in the landfill and intentionally misleading him into believing that the property would be leased to J & J for use as a landfill on the terms agreed upon. The tort of fraud is defined in Georgia law as the willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury. OCGA § 51-6-2 (a). An essential element in every fraud action is a finding that the repre-

---

[1] This subsection specifically excludes from the $250,000 cap on punitive damages those causes of action arising from products liability, which are governed by OCGA § 51-12-5.1 (e) (1).

[2] OCGA § 51-12-5.1 (d) (1) provides, in pertinent part:

In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.

sentation was made with the intention and purpose of deceiving the opposite party and for the purpose of injuring him. *Conner v. Branch*, 185 Ga. App. 565, 566 (364 SE2d 890) (1988); *Camp Realty Co. v. Jennings*, 77 Ga. App. 149 (1) (47 SE2d 917) (1948). While "specific intent to cause harm," OCGA § 51-12-5.1 (f), may not be identical to a finding that a representation was made with the intention and purpose of injuring another, *Conner*, supra, a finding of specific intent to cause harm is inherent in the essential elements of a fraud claim which require the jury to find an intentional misrepresentation intended to deceive and made for the purpose of injuring another. Because McDaniel alleged only intentional fraud and, therefore, the jury awarded punitive damages only for that misconduct by the Elliotts which was intended to deceive and injure McDaniel, under the facts of this case a separate finding of specific intent to cause harm was not required to avoid the $250,000 cap on punitive damages.

3. Although we hold that § 51-12-5.1 (f) does not itself require a separate finding of specific intent to cause harm and no such finding was required in the case before us due to the unusual circumstances presented, it is apparent that in most cases a separate finding of specific intent will be necessary to avoid imposition of the $250,000 cap. In recognition thereof, we take this opportunity to adopt henceforth a bright line rule requiring a party to request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the cap on punitive damages. Such a clear rule promotes judicial economy by eliminating the need for trial courts to determine whether a separate finding is required based on the peculiar allegations and facts of each case and eliminating the need for appellate courts to examine verdicts on a case-by-case basis, taking into account the same peculiar facts and allegations, to determine whether a specific intent to cause harm was necessarily encompassed in each tort alleged. This bright line rule also provides certainty and predictability to the verdicts rendered in this area of the law for the benefit of practitioners and the courts. Because the rule requiring both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the $250,000 cap shall apply only to those cases tried after the date this opinion is published in the official advance sheets, May 7, 1998, we reverse that portion of the Court of Appeals' decision imposing the cap on punitive damages in this case.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998.

J. Douglas Sexton, Giles D. Sexton, for appellant.
Robert E. Andrews, for appellees.