## A98A1246. SPEIR v. KRIEGER.
(509 SE2d 684)

ELDRIDGE, Judge.

This is an appeal from a Clayton County trial court's order granting appellee/plaintiff Craig Krieger's motion for summary judgment and denying appellant/defendant Thomas Lee Speir's summary judgment motion. This case is one in a series of ongoing lawsuits filed by plaintiff Krieger against McFrugal Auto Rental, Inc. ("McFrugal Auto") and its corporate officers.

McFrugal Auto is a closely held corporation whose operating officers and sole shareholders are appellant Thomas Speir and Donald Roveto, who is not a party to this appeal. Speir is registered with the Secretary of State as the Corporate Secretary and Agent for Ser-

vice for McFrugal Auto; Roveto is registered as Chief Executive Officer ("CEO").

In 1993, plaintiff was injured when the vehicle he was driving was hit by a car rented from McFrugal Auto. Thereafter, plaintiff learned that McFrugal Auto carried no liability insurance on its vehicles. Plaintiff filed suit against McFrugal Auto in the State Court of Fulton County based upon McFrugal Auto's failure to carry third-party liability insurance, even though McFrugal sold such non-existent insurance to its renters, and even though such insurance coverage was mandated under state law in order to protect third parties, such as plaintiff, in case of injury. A default judgment was entered against McFrugal Auto on December 18, 1995, and a hearing was held on damages. The Fulton County State Court awarded plaintiff $257,248, $250,000 of which was in punitive damages reflecting plaintiff's claim of fraud in the sale of non-existent insurance. McFrugal Auto did not contest the award of such damages or the factual predicate that provided the foundation for the award.

However, on October 1, 1995, prior to the above judgment, McFrugal Auto's CEO Donald Roveto sold the assets of McFrugal Auto, as well as the assets of a separate, closely held corporation, McFrugal Holding Company, Inc. ("McFrugal Holding"),[1] to a new corporation formed for the purpose of acquiring the assets of McFrugal Auto and McFrugal Holding, McRent-A-Car, Inc. ("McRent"). This action rendered both McFrugal Auto and McFrugal Holding insolvent.

Plaintiff then filed a suit in equity against McFrugal Auto and McFrugal Holding (the "McFrugal Entities") and McRent in the Superior Court of Fulton County, seeking to "pierce the corporate veil" between the corporations by demonstrating their fraudulent operation. In his complaint, plaintiff alleged that there existed a commingling of assets between the McFrugal Entities in order to avoid payment of debt (including plaintiff's judgment), which pierced the corporate veils of the McFrugal Entities. Plaintiff voluntarily dismissed McRent from the suit, and on January 22, 1997, a judgment was entered finding against the McFrugal Entities as to their liability for the prior $257,248 state court judgment against McFrugal Auto. As to the issues raised in plaintiff's complaint, the Fulton County Superior Court specifically found as a matter of fact and law that: "McFrugal [Holding] and McFrugal [Auto] were *operated* as one entity, commingled assets, and *used* corporate entities to perpetuate fraud and injustice upon Georgia consumers, of which the plaintiff

---

[1] Prior to September 9, 1995, Speir was listed as Corporate Secretary and Agent for Service for McFrugal Holding; his wife Eleanor Speir was listed as CEO. Thereafter, the Speirs' names were removed from the registry, and Roveto was listed as CEO.

was one. Plaintiff has, as a matter of law, pierced the corporate veil rendering said entities one entity, as alleged in Plaintiff's complaint." (Emphasis supplied.)

No challenge was made to the findings of the Fulton County Superior Court or the factual predicates in support thereof.

Plaintiff then filed the instant suit in equity in the Superior Court of Fulton County against appellant Thomas Speir and Donald Roveto, as sole corporate, operating officers of McFrugal Auto and McFrugal Holding. For jurisdictional reasons, the case was transferred to Clayton County. In his complaint, plaintiff sought to hold Speir and Roveto, as sole corporate, operating officers and shareholders of the McFrugal Entities, liable for the judgment against the McFrugal Entities, as reflected in the orders of the two Fulton County lawsuits. In addition, plaintiff amended his complaint, alleging that Speir's and Roveto's actions demonstrated a pattern of racketeering activity within the meaning of OCGA § 16-14-1 et seq., civil Racketeer Influenced & Corrupt Organizations ("RICO") Act, and sought treble damages pursuant to OCGA § 16-14-6 (c).

Plaintiff filed a motion for summary judgment, as did Speir and Roveto. The trial court heard the matter on July 17, 1997. The Clayton County trial court, "[a]fter consideration of the arguments of counsel," found no justiciable issue of material fact and granted summary judgment to plaintiff; the court denied the defendants' summary judgment motion. In addition, the Clayton County trial court found "evidence of a specific pattern of racketeering activity, in that these defendants operated as an auto leasing company with many offices in the State, leasing vehicles to be operated upon the streets of and highways of this state without one dime's worth of liability insurance, and as Judge Bonner said [in the Fulton Superior Court case], perpetrated 'fraud and injustice upon Georgia consumers.'" Pursuant to OCGA § 16-14-6 (c), the trial court ordered that the damage award against the corporation be trebled to the amount of $771,744.

Roveto did not challenge the trial court's order, and a final judgment was entered against him on January 30, 1998. Appellant Speir filed this appeal. *Held*:

At the outset we recognize that Speir, in his notice of appeal, specifically requested that "No transcripts are to be transmitted to the Court of Appeals." This includes a transcript of the hearing on the summary judgment motions and all evidence introduced in relation thereto. This also includes the evidence and pleadings that formed the basis for the two Fulton County judgments.

It is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record. The brief cannot serve in the place of the record or the transcript for the purpose of demonstrating error or for supporting a

claim of error. *State v. O'Quinn*, 192 Ga. App. 359, 360 (1) (384 SE2d 888) (1989). Further, "[e]very presumption of legality will be made in favor of a judgment by a court of competent jurisdiction[,] and it will be presumed that a judgment of a court of competent jurisdiction is supported by every fact essential to make such judgment valid and binding." (Citations and punctuation omitted.) *First Financial Ins. Co. v. Mathis*, 214 Ga. App. 537, 539 (448 SE2d 87) (1994).

Thus, we will presume as factually and legally correct the Fulton County State Court order which awarded damages to plaintiff based upon plaintiff's claims that (1) McFrugal Auto failed to carry liability insurance in violation of state law, and (2) McFrugal Auto sold the non-existent liability insurance to its renters. We will presume as correct the Fulton County Superior Court's factual determination that the McFrugal Entities "were *operated* as one entity, commingled assets, and *used* corporate entities to perpetuate fraud and injustice upon Georgia consumers, of which the plaintiff was one." (Emphasis supplied.) We note that Speir did not challenge these findings or the evidence in support thereof.

Further, we will presume as correct the Fulton County Superior Court's legal determination piercing the corporate veil between the McFrugal Entities because of fraudulent *operation* and commingling of assets by its operators thereby perpetrating fraud and injustice on the consumers of Georgia. Speir did not challenge the determination "piercing the corporate veil" or the evidence in support thereof.

Here, our review is strictly limited to the factual and legal issues legitimately raised through the Clayton County pleadings and the Clayton County Superior Court's order as reflected in the record before us.

1. Speir contends that the Fulton County Superior Court order which "pierced the corporate veil" as to the McFrugal Entities simply held McFrugal Holding liable as the "parent company" of McFrugal Auto and did not establish liability as to the operators of the corporations. We disagree.

(a) There is no *competent* evidence in the record before this Court that McFrugal Holding is the "parent" corporation of McFrugal Auto.[2] Moreover, Speir never attempted to allege a parent/subsidiary relationship in the trial court. In all pleadings, Speir referred to McFrugal Auto and McFrugal Holding as having individual corporate status. In the court below, Speir maintained that "the McFrugal companies were 'operated as one entity,' but the [Fulton Superior Court] Judgment did not remove the corporate status of any McFru-

---

[2] Holding corporation: "A corporation that controls the voting power of other individual corporations for the purpose of united action." Black's Law Dictionary (5th ed.).

gal entity." Compare *Fort & Turner Enterprises v. Scrocca*, 195 Ga. App. 554 (394 SE2d 364) (1990). We will not consider this new factual contention regarding a parent/subsidiary relationship, which apparently was neither raised nor ruled upon in the court below.

(b) On October 1, 1995, Roveto, acting on behalf of Speir as the only other shareholder and corporate officer of McFrugal Auto, sold all of the assets of McFrugal Holding and McFrugal Auto to a third corporation, McRent, formed for the specific purpose of receiving the assets. This rendered both McFrugal Auto and McFrugal Holding insolvent. Thereafter, plaintiff filed the Fulton County Superior Court suit seeking to "pierce the corporate veil" as to McFrugal Auto and McFrugal Holding.

If, as Speir contends before this Court, the "purpose" of the Fulton Superior Court action was *only* to pierce the veil between McFrugal Auto and McFrugal Holding "in order to allow Plaintiff to recover from the [alleged] parent corporation," i.e., McFrugal Holding, then the action was futile from the inception, since at the time the action was filed, plaintiff could recover from neither.

We have no record of the prior Fulton Superior Court case before us, save for the final order "piercing the corporate veil" because of the fraudulent *operation* of the McFrugal Entities in commingling assets and operating as "one entity" in order "to perpetrate fraud and injustice upon the consumers of Georgia." However, in this State, "there is a presumption that a trial judge, acting as a public official, faithfully and lawfully performed the duties devolving upon [her,] and in the absence of [record evidence to the contrary], we will presume that the trial court fully complied with the law." (Citations and punctuation omitted.) *AAA Bonding Co. v. State of Ga.*, 192 Ga. App. 684, 685 (3) (386 SE2d 50) (1989). Thus, contrary to Speir's contention, we will *not* find that the Fulton Superior Court judge entertained a meritless action, granted plaintiff ineffective relief, made findings of fact and conclusions of law that had no legal effect, and, while finding fraud in the *operation* of the McFrugal Entities, shielded the *operators* from liability due to the intricacy of their corporate shell game.

(c) "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, [perpetrate] fraud or to evade contractual or tort responsibility." (Citations and punctuation omitted.) *Amason v. Whitehead*, 186 Ga. App. 320, 321 (367 SE2d 107) (1988).

In this case, the Fulton County Superior Court determined that the abuse of the corporate form between the *separate* enterprises "pierced the corporate veil" between the corporations. This determination created liability on the part of Speir, who, along with Roveto, were the only stockholders and operators of both intermingled corpo-

rations and who abused the corporate form. The Fulton Superior Court's holding did not create from McFrugal Auto and McFrugal Holding a new, single corporation. The improper commingling of two *independent* corporations so as to render them "one entity" does not create a separate corporation entirely liable for plaintiff's damages and conveniently shielding the operating officers therefrom. *J & J Materials v. Conyers Seafood Co.*, 214 Ga. App. 63 (446 SE2d 781) (1994); *Brown v. Rentz*, 212 Ga. App. 275 (441 SE2d 876) (1994); compare *Mark Six Realty Assoc. v. Drake*, 219 Ga. App. 57, 59 (463 SE2d 917) (1995). It does not follow that operating two separate corporations illegally creates one legal corporation.

Here, McFrugal Holding did not operate McFrugal Auto. Speir and Roveto operated both corporations, illegally commingling their assets in order to avoid creditors and forming new corporations to receive assets therefrom. "By whatever means the conclusion to disregard corporate entity is arrived at, when it is reached it merely means that under the facts of the case the person or corporation *in control* of the subservient corporation is held liable for the acts or omissions of the subservient corporation." (Citation and punctuation omitted; emphasis supplied.) *Williams Plaza v. Sedgefield Sportswear &c.*, 164 Ga. App. 720 (297 SE2d 342) (1982).

The Fulton County Superior Court order "piercing the corporate veil" of the McFrugal Entities due to the fraudulent operation of the corporations created liability on the part of the McFrugal Entities' operating officers, of which Speir was one.

2. Speir contends that, even if the McFrugal Entities' corporate officers can be held liable under the facts of this case, he was not a corporate officer, because he "officially resigned" from all McFrugal enterprises during a Board meeting in December 1994.

On a motion for summary judgment under OCGA § 9-11-56, the moving party may prevail by (1) presenting evidence which negates an essential element of the plaintiff's claims, or (2) showing an absence of evidence to support the case as to any essential element. *Caven v. Warehouse Home Furnishings Distrib.*, 209 Ga. App. 706 (434 SE2d 532) (1993). If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

Speir submitted an affidavit asserting that he had resigned from all McFrugal enterprises in December 1994 and, thus, should not be liable as a corporate officer for any judgment rendered against the McFrugal Entities.

Plaintiff, however, tendered certified copies of the corporate registry for McFrugal Auto and McFrugal Holding, which registry is filed with the Secretary of State and is *required* by law to be updated

annually. See OCGA §§ 14-2-1622; 14-2-1420. Moreover, the failure to notify the Secretary of State within 60 days that a corporation's registered agent has resigned subjects such corporation to administrative dissolution. OCGA § 14-2-1420 (4). The certified documents showed that, as of September 11, 1996, Speir was still registered as the corporate secretary and *registered agent* of McFrugal Auto.

Speir submitted no evidence in rebuttal thereto. In fact, before this Court Speir admits that his name was left on the registry. He asserts, however, that the failure to remove him from the corporate registry was due to the "negligence of the corporation," because he had "received assurances" that his name would be removed.

Based upon the above, the trial court determined that there was no genuine issue of material fact as to Speir's status as a corporate officer of the McFrugal Entities during all relevant periods. We agree.

A self-serving, conclusory affidavit not supported by fact or circumstances is insufficient to raise a genuine issue of material fact. *Brooks v. Boykin*, 194 Ga. App. 854, 856 (3) (392 SE2d 46) (1990). In light of the affirmative evidence of Speir's continuous corporate involvement in McFrugal Auto, Speir could no longer rest on his pleadings, but was required to put forward some evidence, other than his self-serving affidavit, that made his status as a corporate officer of McFrugal Auto a disputed issue of fact. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). He did not. He did not tender a copy of his alleged notice of resignation; he did not submit an affidavit from any other corporate officer stating Speir's name was inadvertently left on the corporate registry; he submitted nothing. Even viewing the evidence in a light most favorable to Speir, there was no error in the trial court's finding.

3. Speir contends that he was not a "party" to the prior Fulton County litigations between plaintiff and the McFrugal Entities, and thus the prior judgments cannot be enforced against him. We disagree. Speir's contention ignores the legal effect of the judgment "piercing the corporate veil," a judgment that Speir did not contest.

"As a legal entity, a corporation is separate and distinct from its officers, stockholders, and agents. The legal advantage of incorporation being the limited liability of its stockholders. Thus, owners of corporations restrict personal liability by acting only as an agent of the corporation. However, using such expressions as 'piercing the corporate veil,' or 'looking at the substance rather than at the form,' or 'disregarding the corporate fiction,' the courts are constantly demonstrating a willingness to disregard the separateness of the entity of a corporation where such corporation has overextended its privileges in the use of the corporate entity to defeat justice, to perpetrate fraud, or to evade statutory, contractual or tort responsibility. Courts

permit 'piercing the corporate veil' in situations where the parties involved have themselves disregarded the separateness of legal entities by a commingling and confusion of properties, records, control, etc. Under such circumstances, the court may disregard the corporate entity." (Citations and punctuation omitted.) *Casey v. Carrollton Ford Co.*, 152 Ga. App. 105, 106 (262 SE2d 255) (1979). " 'The interposition of corporate form has never been permitted to thwart the action of the law upon a wrong doer.' " Kaplan's Nadler, Ga. Corporation Law, 1998 ed., § 3-14.

Here, Speir was one of only two stockholders of the McFrugal Entities and two operating officers of McFrugal Auto. The Fulton Superior Court judgment "pierced the corporate veil" in finding the corporate form was abused in the operation of the corporation, which ruling in effect negated the separate corporate existence. Such dissolution of the separate corporate entity exposed Speir's identity of interest with McFrugal Auto and his liability as its operator.[3] *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 535 (478 SE2d 601) (1996). Speir did not contest this judgment.

"A judgment of a court of competent jurisdiction shall be conclusive between the same parties *and their privies* as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." (Emphasis supplied.) OCGA § 9-12-40. "[P]rivity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." (Citations and punctuation omitted.) *Miller v. Steelmaster Material Handling Corp.*, supra at 535. "[T]he trend is becoming more and more pronounced that the jurisdiction of all the states, including Georgia, are breaking down the impregnability of this fiction of the separateness of the corporation and its members. More sympathetically and more frequently are the courts coming to realize the fallacy of this fiction so that the law of corporations is developing along the lines that a corporation cannot be considered without taking into account its lifeblood, its activities supplied by, interwoven with, and related to the individuals who constitute its members, shareholders and stockholders." Kaplan's Nadler, Ga. Corporation Law, 1998 ed., § 3-14.

We conclude that, by virtue of the piercing of the corporate veil,

---

[3] Also, under the specific facts of this case, compare the legal precedent under workers' compensation law where a judgment was not collected because "the employer [corporation] carried no . . . insurance[, and] the employer [corporation] was insolvent. Had the employer's agents [corporate officers] carried out their duties . . . by procuring . . . insurance coverage, the award would have been collected. Under these limited circumstances, [plaintiff] may pursue a claim at law against the agent of the employer [corporate officer] for an amount equal to the award." *Samuel v. Baitcher*, 247 Ga. 71, 73-74 (274 SE2d 327) (1981).

the corporate shield is gone. Consequently, Speir and McFrugal Auto are privies, and the prior judgment against one may be enforced against the other.[4] This enumeration of error is meritless.

4. In his fourth enumeration of error, Speir contends that the trial court erred in finding him liable for the torts committed by the corporations, because there was no evidence in the record before the Clayton County trial court that he "directly participated, directed, or co-operated in the commission of any tort" while an officer of the McFrugal Entities. *Cherry v. Ward*, 204 Ga. App. 833, 834 (420 SE2d 763) (1992).

Speir's argument ignores the fact that the analysis in *Cherry* applies only in those situations wherein the evidence is *insufficient* to pierce the corporate veil. Then, the liability of the corporate officers for a tort committed *by the corporation* is dependent upon separate evidence of direct participation in the tort. See *Brown v. Rentz*, supra at 276 (2). "[When a corporate officer] demonstrat[es] the inapplicability of the 'piercing the corporate veil' exception to the general rule of non-liability[,] . . . personal liability to appellees as the result of the Corporation's operation . . . can only be for such tortious acts as he personally committed or specifically directed be done." *Smith v. Hawks*, 182 Ga. App. 379, 385 (355 SE2d 669) (1987). Clearly, it is unnecessary to prove an officer's participation in torts "committed *by* the corporation," when the corporation has been found to be non-existent. "The law intervenes when the separate personalities of the corporation and its owner no longer exist." (Punctuation omitted.) *Brown v. Rentz*, supra at 276 (1).

5. Although Speir did not challenge the prior Fulton County State Court's award of damages to plaintiff, in his fifth and sixth enumerations of error, Speir challenges the Clayton County trial court's determination to treble plaintiff's damage award based upon a violation of OCGA § 16-14-1 et seq., civil RICO. Speir contends that (a) there was no evidence of predicate acts as required by RICO; (b) there was no evidence of *criminal* acts as required by RICO; and (c) the $250,000 punitive damage award was not subject to trebling under RICO because punitive damages are capped at $250,000 under OCGA § 51-12-5.1 (g). We disagree with these contentions.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

---

[4] None of the cases upon which Speir relies relates to a finding of privity between a corporation and its operating officer *after* the corporate veil had been pierced in the prior judgment sought to be enforced, thereby exposing the officer to liability. See *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432, 433 (489 SE2d 153) (1997); *Hartley v. Shenandoah, Ltd.*, 170 Ga. App. 868 (318 SE2d 508) (1984). See also *Anderson Oil Co. v. Benton Oil Co.*, 246 Ga. 304 (271 SE2d 207) (1980) (prior judgment against corporation not enforceable against president thereof when fraud committed by the corporation).

law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

(a) The predicate acts necessary to prove a pattern of racketeering activity as defined by OCGA § 16-14-3 (8) were proved as a matter of law through the Fulton County Superior Court's conclusive, factual determination that the McFrugal Entities were operated in such a manner as "to perpetrate fraud and injustice upon Georgia *consumers*, of which the Plaintiff was one." (Emphasis supplied.) We will presume the correctness of this finding and the sufficiency of the factual basis therefor. *First Financial Ins. Co. v. Mathis*, supra at 539. Thus, the commission of fraudulent acts against multiple consumers was proved as a matter of law, and the "predicate acts" requirement was satisfied. See *Olukoya v. American Assn. of Cab Cos.*, 219 Ga. App. 508, 510 (465 SE2d 715) (1995).

(b) Further, the above Fulton County Superior Court factual determination as to the fraudulent acts perpetrated against Georgia consumers by the McFrugal Entities was grounded in an equitable analysis regarding liability for the damages already awarded plaintiff in the Fulton County State Court suit against McFrugal Auto. Thus, the two suits are factually interrelated.

In the state court suit, plaintiff was awarded damages based (1) upon his claim that McFrugal Auto rented its vehicles to Georgia consumers without purchasing third-party liability insurance as required by law, OCGA § 33-34-4; *Jones v. Wortham,* 201 Ga. App. 668 (411 SE2d 716) (1991); and (2) upon the sale of such non-existent insurance to its renters. We also presume the correctness of the state court's order and the factual basis therefor. *First Financial Ins. Co. v. Mathis*, supra at 539.

Accordingly, the Clayton County trial court did not err in finding a RICO violation. While we have held that the *illegal* sale of insurance is not in and of itself a basis for a RICO action absent further evidence of fraud rising to the level of theft by deception,[5] we find that the repeated sale to unsuspecting Georgia consumers of *non-existent* insurance is the very essence of such fraud amounting to theft by deception. OCGA §§ 16-8-3 (b); 16-14-3 (9) (A) (ix); compare *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602 (448 SE2d 737) (1994). This conduct on the part of McFrugal Auto is exactly the type of criminally fraudulent activity masquerading as "business" that RICO was designed to address. OCGA § 16-14-2 (a).

---

[5] *Olukoya v. American Assn. of Cab Cos.*, supra at 510.

A violation of RICO was shown as a matter of law based upon the conclusive, factual determinations contained in the prior Fulton County suits. The trial court's ruling was not error.

(c) Speir contends that even if the evidence demonstrates a violation of RICO, the $250,000 punitive damage award was not subject to be trebled under RICO because punitive damages are capped at a maximum of $250,000 pursuant to OCGA § 51-12-5.1 (g). This contention is without merit.

OCGA § 51-12-5.1 (f) states in pertinent part that "[i]n a tort case . . . if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, . . . there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor." Evidence sufficient to show a RICO violation necessarily also demonstrates the "intent to cause harm" that removes the cap to a punitive damage award. The conduct proscribed under RICO shows "an interrelated pattern of criminal activity motivated by or effect of which is [to derive] pecuniary gain." OCGA § 16-14-2 (b). Herein, the facts demonstrated a pattern of racketeering activity under OCGA §§ 16-14-3 (9) (A) (ix) and 16-14-4 which amounted to intentional theft by deception through the fraudulent sale of non-existent insurance. Accordingly, the trial court did not err in applying RICO and trebling the amount of punitive damages awarded to the plaintiff.

In addition, the Fulton County Superior Court determined that the McFrugal Entities were operated with the intent to defraud the consumers of Georgia. A finding of specific "intent to cause harm" pursuant to OCGA § 51-12-5.1 (f) is inherent in the essential elements of such an intentional fraud. *McDaniel v. Elliott*, 269 Ga. 262 (497 SE2d 786) (1998). Since the punitive damage award herein was based upon an intentional fraud, the award was not subject to the $250,000 cap of OCGA § 51-12-5.1 (g). *McDaniel v. Elliott*, supra.

6. In his enumerations of error 7 and 8, Speir alleges that the trial court erred in denying his motion for summary judgment because the record contains no evidence that fraud was committed and no evidence that the McFrugal Entities failed to maintain proper insurance on its vehicles. However, it is not surprising that the record in this case contains no evidence as to these issues; the factual bases for these contentions were decided adversely to Speir in the prior Fulton County judgments, which judgments went unchallenged by Speir, and the records pertaining thereto were not made a part of the instant appeal. As per Division 1, supra, it was not error to deny Speir's motion for summary judgment based upon issues that had already been decided in a court of competent jurisdiction.

7. Plaintiff's motion to supplement the record on appeal pursuant to OCGA § 5-6-41 (f) was properly denied by the trial court. The

evidence which plaintiff sought to add to the record was not admitted at trial. *Nixon v. Rosenthal*, 214 Ga. App. 446, 447 (448 SE2d 45) (1994).

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., Johnson, P. J., and Smith, J., concur in judgment only. Blackburn, J., dissents.*

BLACKBURN, Judge, dissenting.

I must respectfully dissent from the majority as it allows a corporate officer to be held responsible for actions of a corporation without first requiring (1) that such officer be appropriately brought within the jurisdiction of the applicable court and (2) evidence that the officer took part in the commission of the corporation's tort. See *Brown v. Rentz*, 212 Ga. App. 275 (441 SE2d 876) (1994); *Cherry v. Ward*, 204 Ga. App. 833 (420 SE2d 763) (1992). No matter how egregious the facts, a party must still be afforded notice and the opportunity to defend actions brought against them individually. No judgment may issue against those who were not parties to the action. See *Hartley v. Shenandoah, Ltd.*, 170 Ga. App. 868, 869 (318 SE2d 508) (1984) (judgment obtained against corporate general partner in prior action not enforceable in subsequent action against other general partners not parties to prior suit); *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432, 433-435 (1) (489 SE2d 153) (1997) (collateral estoppel not applicable and judgment in first action not enforceable against a nonparty thereto in a subsequent action).

The corporate officer in question, Speir, was not a defendant or a party in any prior action where personal jurisdiction attached. In the instant case, the majority affirms Speir's liability for a corporation's actions solely on the basis that he was a corporate officer. Speir was not a party to the previous action in which the trial court pierced the corporate veil between the two corporations, McFrugal Holding Company, Inc. and McFrugal Auto Rental, Inc. In that action, the trial court determined only that the two corporations were operated as one entity. The trial court's determination did not create personal liability of Speir as a corporate officer because he was not a party to the action. The present action was brought to hold the corporate officers personally responsible for the judgment already obtained against the corporations. However, no evidence has been presented as to Speir's involvement with the actions of the corporations. Such evidence is necessary to hold Speir personally liable for the judgment obtained against the corporations.

Furthermore, the evidence supports a finding that Speir had resigned from his position as a corporate officer of the McFrugal companies in December 1994. Speir testified that he resigned by giving notice thereof at a board of directors meeting. Speir's actions com-

plied with OCGA § 14-2-843, which provides: "An officer may resign at any time by delivering notice to the corporation. A resignation is effective when the notice is delivered unless the notice specifies a later effective date. A copy of the notice of resignation . . . *may* be filed with the Secretary of State." (Emphasis supplied.) Thus, a resignation may be effective whether or not notice of the resignation is filed with the Secretary of State. Following Speir's resignation, in February 1995, his name was removed from corporate listings filed with the Secretary of State. Viewing all evidence and inferences therefrom in the light most favorable to Speir, he resigned from his position as a corporate officer of McFrugal as required by law prior to the acts upon which the suit against him are based.

The majority contends that the evidence shows that Speir was still an officer of McFrugal Auto, if not McFrugal Holding, as of September 11, 1996. The majority bases this contention on a letter from the Office of the Secretary of State to which McFrugal Auto's corporate registration is attached. The letter, itself, is dated September 11, 1996; however, this reflects only the date on which the Secretary of State prepared the cover letter. The corporate registration form which was attached was dated February 21, 1994, months prior to Speir's resignation. As such, these documents do not support the majority's contention that Speir remained an officer of McFrugal Auto in 1996.

The majority apparently contends that Speir, despite the fact that he resigned from the McFrugal Entities in December 1994, still had some duty to file a change in the corporate registry, and, as a result of his failure to do so, he could still be treated as a corporate officer. The law does not support this argument. As discussed above, OCGA § 14-2-843 places no requirements on a resigning officer to give written notice to the Secretary of State. Furthermore, a corporate officer, once resigned, lacks authority to file a new corporate registry reflecting changes in leadership. Thus, Speir had no duty to notify the Secretary of State that he had resigned from the McFrugal Entities, and he had no authority to alter the corporate registry of McFrugal Auto, dated February 21, 1994, once he had resigned.

In addition, I cannot agree with the majority's affirmance of the trial court's ruling that punitive damages should be trebled. As the majority has reasoned in a prior case, "the purposes of treble damages and punitive damages are substantially the same." *Simpson Consulting v. Barclays Bank*, 227 Ga. App. 648, 655 (4) (490 SE2d 184) (1997) (physical precedent only). Each penalty, then, is a similar form of punishment. Therefore, the trebling of punitive damages works to inappropriately heap punishment on punishment, and the result is not just punitive, but oppressive. Although it may be proper to add treble damages to punitive damages, it should not be proper to

multiply one by the other. The latter is the result the majority espouses here, and I simply cannot condone such an excessive outcome.

Because the trial court erred in granting plaintiff's motion for summary judgment, I respectfully dissent from the majority which affirms the trial court.

DECIDED NOVEMBER 20, 1998.

*Merry & Associates, Rebecca S. Merry, Eldridge Melton,* for appellant.

*S. Robert Hahn, Jr.,* for appellee.